## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

Annemarie B.,[1]

               Plaintiff,

    v.                              1:25-CV-00218
                                      (MJK)

Commissioner of Social Security,

               Defendant.

Howard D. Olinsky, Esq., for Plaintiff
Candace Brown Casey, Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

Annemarie B. brought this action under the Social Security Act

(42 U.S.C. § 405(g)) seeking judicial review of the Social Security

Commissioner's final decision denying her application for benefits. (Dkt.

1). Annemarie B. consented to the jurisdiction of a Magistrate Judge.

(Dkt. 11). Both parties filed briefs (Dkts. 13, 15, 16), which the Court

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

1

treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On May 22, 2020, Annemarie B. filed an application for Disability Insurance Benefits ("DIB") alleging disability beginning May 27, 2015. *Annemarie B. v. Comm'r Soc. Sec.*, No 1:23-cv-129 (FJS/CFH), 2024 WL 759921, at *1 (N.D.N.Y. Feb 5, 2024) *report and recommendation adopted*, 2024 WL 756942 (N.D.N.Y. Feb. 23, 2024). Her application was initially denied on January 14, 2021, and after reconsideration, on March 5, 2021. (*Id.*) On August 10, 2021, a hearing was held before Administrative Law Judge ("ALJ") Arthur Patane. (*Id.*). On November 3, 2021, ALJ Patane issued an unfavorable decision. *Id.* On December 16, 2022, the Appeals Council denied Annemarie B.'s request for review. *Id.* Annemarie B. appealed to this Court which vacated and remanded the Commissioner's decision consisted with the Report-Recommendation and Order issued by Magistrate Judge Hummel on February 5, 2024. *Id.*

On March 8, 2024, the Appeals Council issued a remand order directing the ALJ to obtain additional vocational evidence to determine

whether jobs existed in significant numbers at step five. (T. 2254-55).[2]

The ALJ held a hearing on October 2, 2024. The ALJ obtained evidence from Peter Manzi, a Vocation Expert ("VE"), but he did not testify. The VE provided a "Vocational Interrogatory," which he signed on October 31, 2024 and submitted along with his resume. (T. 2415-2428). The ALJ sent the Vocational Interrogatory and a letter to Annmarie B.'s attorney, Bradford Myler, the next day. The ALJ's letter stated, in pertinent part:

> I have obtained additional evidence that I propose to enter into the record. Please log into http://ssa.gov/ar/ to view the new proposed exhibits.
>
> VOCATIONAL INTERROGATORY EXHIBIT B33E
>
> You may submit any or all of the following: written comments concerning the evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider (including a report from the treating physician). You may also submit written questions for the author(s) of the new evidence. If you do so, I will consider whether they need to be completed.
>
> You may also request a supplemental hearing. If you request a supplemental hearing, I will grant the request unless I decide to issue a fully favorable decision… In addition, you may request an opportunity to question witnesses, including the author(s) of the new evidence. I will grant a request to question a witness if I

---

[2] All page references are to the Administrative Transcript ("T."), and not the page numbers assigned by the CM/ECF pagination system.

3

determine that questioning the witness is needed to inquire fully into the issues. If a witness declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.

***

**Actions I Will Take If I Do Not Hear From You**

If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records. Unless I determine that the claimant is eligible for a supplemental hearing, I will enter the new evidence in the record and issue my decision.

(T. 2429-2430).

Annemarie B. did not take the actions described in the letter, and she does not argue otherwise on appeal.

On December 17, 2024, ALJ Patane issued an unfavorable decision. (T. 2128-49). After ALJ Patane's decision became the final agency decision, Annemarie B. appealed.

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a claimant seeking Title II benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which

4

has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). Additionally, the claimant must show:

> physical or mental impairment or impairments [must be] of such severity that they are not only unable to do their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which they live, or whether a specific job vacancy exists for them, or whether they would be hired if they applied for work.

42 U.S.C. § 1382c(a)(3)(B) (cleaned up).

The Commissioner uses a five-step process to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then

5

determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467). The claimant has the burden of establishing disability at the first four steps. *Berry*, 675 F.2d at 467. If the claimant establishes that their impairments prevent them from performing their past work, then the burden shifts to the Commissioner to prove the fifth and final step. *Id.*

### B.   Scope of Review

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It is "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* But this standard is a very deferential standard of review "—even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Even so, reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But they cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

The record includes Annemarie B.'s medical treatment records which the parties are familiar with. The Court will refer to the pertinent records and Annemarie B.'s hearing testimony in its analysis as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the five-step sequential evaluation, the ALJ determined that Annemarie B. had not engaged in substantial gainful activity since May 22, 2020, the application date. (T. 2133).

At step two, the ALJ found that Annemarie B. had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post surgeries of the right hip and right shoulder, obesity, fibromyalgia, and asthma/chronic obstructive pulmonary disease (COPD). (*Id.*). In addition to the above noted severe impairments, the record documents diagnoses and/or a history of treatment for an unspecified depressive disorder, adjustment disorder with anxiety, and a learning disorder by history. (*Id.*). However, the ALJ determined that neither the medical evidence contained in the record at the time of the prior ALJ decision nor the new medical

8

evidence of record contains sufficient clinical, treatment, or medical

opinion evidence to support a finding that these or any other mental

impairments have caused or contributed to more than minimal work-

related limitations which have lasted for 12 continuous months or more.

(*Id.*). Accordingly, the ALJ found that the regulatory requirements for

severity and/or duration are not satisfied with respect to these

impairments. (*Id.*).

At step three, the ALJ determined that Annemarie B.'s

impairments or combination of impairments did not meet or medically

equal the severity of one of the listed impairments in Appendix 1 to 20

C.F.R. Part 404, Subpart P. (T. 2135).

Next, the ALJ determined that Annemarie B. had the residual

functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 416.967(a)
> except that she can occasionally balance, stoop, kneel,
> crouch, crawl, and climb ramps/stairs/ladders/scaffolds, must
> avoid respiratory irritants, must be allowed to use a cane for
> assistance with ambulation outdoors, and due to the severity
> and chronicity of her pain, retains the attention and
> concentration skills necessary to perform simple, routine
> tasks.

(T. 2136).

9

When crafting the RFC, the ALJ stated that he considered all Annemarie B.'s symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*). The ALJ added that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" as required by 20 C.F.R. §§ 404.1520c. (*Id.*).

At step four, the ALJ found that Annemarie B. had no past relevant work. (T. 2140).

At step five, the ALJ determined that considering Annemarie B.'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform. (T. 2141).

Accordingly, the ALJ determined that Annemarie B. is not disabled as defined in the Social Security Act, since May 22, 2020 (the date her application was filed. (T. 2142).

## V.    ISSUES IN CONTENTION

Annemarie B. argues that remand is warranted because the ALJ failed to develop the record. More specifically, she contends that the ALJ erred by (1) accepting and relying on the VE's affidavit, rather

than live testimony; (2) that the ALJ violated this Court's prior order by only providing national job numbers, not regional and local job numbers; and (3) that newly submitted evidence—data she obtained from SkillTran—undermines the VE's opinion. *See* (Annemarie B's Brief ("Pl. Br."), pgs. 6–11 (Dkt. 13)). (Annemarie B.'s Reply Brief ("Rep. Br."), pgs. 1–7 (Dkt. 16))

The Commissioner responds that the ALJ complied with the Court's remand order; that VE testimony submitted via interrogatory is permitted; that Annemarie B.was provided, but did not avail herself of, the opportunity to request a supplemental hearing, submit additional questions to the VE, cross examine the VE, and submit additional evidence and argument. Defendant's Brief (Dkt. 15, Def. Br., pgs. 9–13). The Commissioner adds that Annemarie B.'s failure to take the actions described in the ALJ's letter forecloses her from submitting additional evidence. (Def. Br. At pgs. 13–18). For the reasons detailed below, the Court agrees with the Commissioner.

## VI.   DISCUSSION

The Court affirms the ALJ's decision for three reasons. First, the ALJ complied with this Court's prior remand order. Second, the ALJ

11

properly accepted VE testimony through an interrogatory. Third, Annemarie B. is foreclosed from submitting additional evidence at this stage of the proceedings.

### A.    The ALJ complied with this Court's prior remand order.

The Court finds that the ALJ properly complied with this Court's prior remand order. An ALJ's failure to follow a Court's remand order is itself legal error that is subject to reversal. But ALJ Patane complied with the Court's prior remand order. In consequence, the Court will not disturb ALJ Patane's decision.

ALJ Patane complied with this Court's prior remand order. When "a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." *Sullivan v. Hudson,* 490 U.S. 877, 885 (1989). An ALJ's failure to follow a court's remand order is reversible error. *Id.* at 886 ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on

further judicial review."). Put plainly, a federal district court does not make "allegations" in a social security remand order; "rather, the court directs the Commissioner to correct the noted errors on remand, and the Commissioner is obligated to correct those errors in the manner described by the court." *Johnson v. Comm'r of Soc. Sec.*, 2016 WL 2854516 (D. Vt. May 16, 2016).

More to the point, "instructions to an ALJ from a federal district court in Social Security cases constitute the law of the case." *Krawczyk v. Berryhill*, 17-CV-01311, 2019 WL 244491, at *4 (W.D.N.Y. Jan. 17, 2019) (collecting cases). Under the law of the case, the Commissioner is "implicitly limited by any findings of the district court regarding the application for disability benefits." *Gladle v. Astrue*, 12-CV-0284, 2013 WL 4543147, at *3 (N.D.N.Y. Aug. 27, 2013). And in the Social Security context, courts also apply the "rule of mandate." *Krawczyk*, 2019 WL 244491, at *4 (collecting cases). The rule of mandate "presents a specific and more binding variant of the law of the case doctrine" because it "requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision." *Id.* (citations and quotations omitted); *see also Quern v. Jordan*, 440 U.S.

13

332, 347 n. 18 (1979) (considering whether post-mandate conduct of the lower court was consistent "with either the spirit or the express terms of our decision").

Here, ALJ Patane's actions on remand were consistent with both the letter and spirit of this Court's prior remand order. In the prior remand order, the Court stated in relevant part: "the ALJ failed to meet his burden at step five to demonstrate that substantial evidence supports the conclusion that a significant number of jobs exist in the national *or* regional economy that Annemarie B. can perform based on her RFC." *Annemarie B.*, 2024 WL 758821, at *6 (emphasis added) (cleaned up). The Court further noted that the "ALJ failed to sufficiently determine whether there are significant number of jobs that Annemarie B. can perform in the local, regional, *or* national economy." *Id.* (emphasis added) (cleaned up). In response, the ALJ obtained a vocational interrogatory from VE Manzi. (T. 2425–2428). The ALJ also issued a letter to Annemarie B. stating that she had the right to request a supplemental hearing, submit additional questions to the VE, cross examine the VE, and submit additional evidence and argument—but Annemarie B. did not avail herself of these rights. *See* (T. 2429–2430).

14

Therefore, Annemarie B.'s right to later question the VE's methodology was foreclosed.

Moreover, Annemarie B. misreads the Court's prior order. That part of the Court's prior order which referred to regional jobs was predicated on finding less than 10,000 jobs. *Annemarie B.*, 2024 WL 758821, at *7. As the Commissioner correctly notes, the Court's prior order stated "it is not clear whether the three jobs the VE provided are 'representative jobs' or whether there exist other jobs that Annmarie B. can perform based on her RFC, *and if such jobs are fewer than 10,000*, remand would serve the 'useful purpose' of allowing the ALJ to (1) determine whether there exist other jobs with Annemarie B.'s RFC in significant numbers in the national economy; and (2) include the number of jobs available regionally." *Annemarie B.*, 2024 WL 758821, at *7 (emphasis added) (cleaned up). The Commissioner's reading is consistent with this Court's precedent. *See, e.g.*, *Mark E. v. Kijakazi*, No 8:20-cv-425, 2021 WL 4168590, at *9 (N.D.N.Y. Sept 14, 2021 (explaining that "although the second circuit has not addressed whether the ALJ must consider regional job numbers, as well as national job numbers, district courts within this Circuit have determined that the

15

ALJ may rely on either national or regional job numbers.") (collecting cases); *see also* 20 C.F.R. § 404.1566 ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.").

At a more basic level, Annemarie B. reads the Court's prior order too narrowly. She contends that the ALJ failed to elicit regional job numbers from the VE "in direct contravention of this Court's" prior remand order. (Pl. Br., pgs. 12–13). But that is not so. The Court remanded because the Commissioner had not met his burden to show that a significant number of jobs existed in the national *or* regional economy which Annemarie B. could perform. *Annemarie B.*, 2024 WL 758821, at *6 (emphasis added). By using the disjunctive word "or," the Court specifically gave the ALJ separate options for producing substantial evidence concerning the available jobs for Annemarie B. *See Barscz v. Director*, 486 F.3d 744, 750 (2d Cir. 2007) (noting that phrases listed in the disjunctive "should be treated independently"). That is, the ALJ could either provide (1) national job data; *or* (2) provide regional job data to meet the step five substantial evidence burden. *See Annemarie B.*, 2024 WL 758821, at *6. Here, per the Court's prior

16

remand order, the ALJ was only required to provide regional job numbers if national job numbers were fewer than 10,000. *Annemarie B.*, 2024 WL 758821, at *7.

Based on her RFC, VE Mazni found 57,146 jobs in the national economy that Annemarie B. could perform. (T. 2427). With that, there was no need for the ALJ to seek regional job numbers. ALJ Patane therefore did not violate this Court's prior remand order.

B. **The ALJ correctly relied on VE Manzi's opinion and the Court cannot entertain Annemarie B.'s newly submitted "evidence."**

ALJ Patane properly accepted VE Manzi's testimony via an interrogatory and the Court concludes that Annemarie B. cannot offer additional evidence at this point. When reviewing an ALJ's decision, the reviewing court must ensure that the ALJ's determinations are supported by substantial evidence. Here, ALJ Patane supported his decision with substantial evidence. Therefore, the Court affirms the decision.

ALJ Patane properly accepted VE Manzi's testimony through an interrogatory. First, an ALJ may only rely on a VE's opinion where it rests on a sufficient foundation, such as "personal experience, labor

market surveys, and published statistical sources." *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (summary order). Whether a VE's opinion constitutes substantial evidence is a case-by-case determination—VE opinions clearing that bar must have some "markers of reliability." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019). ALJ Patane was entitled to rely on VE Manzi's opinion because it rested on a sufficient foundation. Specifically, VE Manzi's lengthy resume, the sources of information on which he based his opinion (including the second quarter Bureau of Labor Statistic report that he cited), and his experience working with "staffing agencies, temp agencies and rehabilitation agencies and on placement" provided that foundation. (T. 2428). Because the report rested on a sufficient foundation, ALJ Patane did not err in relying on VE Manzi's job numbers.

Second, ALJ Patane properly relied on VE Manzi's report because Annemarie B. never contested the report, even though she was offered ample opportunity to do so. *See Pamela M.H. v. Comm'n'r,* No. 5:05-CV-00297, 2024 WL 1468906, at *6 & fns. 9–10 (N.D.N.Y. Feb. 22, 2024), *report and recommendation adopted*, 2024 WL 1131043 (N.D.N.Y. Mar.

15, 2024) (noting that plaintiff's counsel did not challenge the VE about his methodology for calculating job numbers that "absent an objection, the ALJ is entitled to rely on the vocational expert") (quotation omitted); *see also Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 225 (E.D.N.Y 2021) (plaintiff's counsel failed to raise issue at hearing thereby shielding the ALJ's determination from challenge on appeal). Because Annemarie B. never challenged VE Manzi's methodology, even though she was given the opportunity to do so, ALJ Patane properly relied on VE Manzi's job numbers.

Lastly, Annemarie B. fails to address whether the Court can consider her new SkillTran evidence on appeal—it cannot. "A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) (cleaned up). This Court's review is limited to "determining whether the SSA's conclusions were supported by substantial evidence *in the record* and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (emphasis added) (internal quotation marks omitted)). And in cases

where a claimant is seeking a sentence four remand—which Annemarie B. is (T. 11)—the Court's review is limited to the "pleadings and transcript of the record." *Raitport v Callahan*, 183 F.3d 101, 103–04 (2d Cir. 1999).

Annemarie B.'s SkillTran evidence is indisputably outside of the record and is therefore not properly before the Court. But even if the Court could review this "evidence," which it cannot, Annemarie B.'s new "evidence" is simply raw job data. *See* (Pl. Br., pg. 9). Although the raw data seems to address Annemarie B.'s contentions, without the benefit of VE testimony, the Court cannot ascertain its probative value on counsel's representation—interpreting raw data is what expert witnesses are for. *See Poole v. Saul*, 462 F. Supp. 3d 137, 165 (D. Conn. 2020) (explaining that there was "no basis on which to conclude that the research of counsel is somehow inherently more reliable than the expert testimony of the VE.") (cleaned up) (quoting *Mott v. Saul*, No. 3:19-CV-00733, 2020 U.S. dist. LEXIS 90780, at *37 (D. Conn. Feb 24, 2020)). As it stands, the Court cannot entertain the raw job data from SkillTran that Annemarie B. submitted.

At bottom, the time to offer new evidence and challenge VE Manzi's opinion expired when Annmarie B.'s prior attorney failed to exercise the options offered to her in the ALJ's letter. That prior attorney's failure to do so is fatal to her current attorney's efforts to question the VE's interrogatory at this junction. Moreover, the Court cannot review Annemarie B.'s newly submitted "evidence." Therefore, the Court affirms ALJ Patane's decision.

\* \* \*

Annemarie B.'s arguments are unavailing. ALJ Patane followed this Court's prior remand order, properly relied on VE Manzi's interrogatory, and declined to entertain the raw SkillTran data offered by Annemarie B. In consequence, the Court affirms ALJ Patane's decision.

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Annemarie B.'s motion for judgment on the pleadings (Dkt. 13, 16) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. 15) is **GRANTED**; and it is further

**ORDERED**, that the ALJ's decision is **AFFIRMED** and the

Complaint (Dkt. 1) **IS DISMISSED IN ITS ENTIRETY**.


Dated: March 12, 2026.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge